## THE STATE *v.* HENDERSON, a 'Slave.

On appeal taken by a slave convicted of a capital offence and sentenced to death—*Held:* That although no counsel appeared for the accused and no assignment of errors was made in the Supreme Court, the judgment should be reversed and the accused discharged, as it appeared from an inspection of the record that he had been convicted of an offence under a statute which had been repealed since the conviction took place.

APPEAL from the Justices Court of the Parish of East Feliciana.

MERRICK, C. J. The accused was charged with having, on the 30th day of January, 1857, stabbed *John Robins,* his master, with a large pocket knife, and inflicting several severe and dangerous wounds.

He was convicted by the special tribunal provided by law for his trial, and sentenced to be executed.

He has appealed; but the transcript of appeal was filed by the District Attorney.

The record does not contain any bill of exception nor assignment of errors.

Some members of the court have had doubts whether the appeal should not be *ex officio* dismissed. The statute under which the accused was convicted has been repealed. When we look, therefore, at the accusation filed by the District Attorney, we see that the accused is charged with no legal offence by reason of the repeal of the statute on which the prosecution is based. As more than twelve months have elapsed since the appeal was taken, its dismissal will have the effect of subjecting the accused to the penalty of death under a statute which has been repealed.

In view of the momentous consequences which would result from a dismissal of the appeal, we consider it a proper occasion to examine and ascertain the constitutional rights of this court and the proper practice in a case of this kind.

In the case of the *State* v. *Slave King,* 12 An. 593, decided at Monroe, which was upon a prosecution under the same repealed statute, the point, as to the effect of the repeal of the statute, was not made by the counsel for the accused, yet we requested the counsel to present their views in writing on the effect of the repealing clause in the statute. After a careful consideration of the question, we reversed the judgment and conviction in that case, and discharged the accused.

But it is suggested that there are no bills of exception and no assignments of error in this case, and that the accused has not appeared by counsel, and, therefore, it must be inferred that he has abandoned the appeal.

This by no means follows. It is possible that the accused, shut up in prison, holding nothing but what belongs to his master, whom he has so deeply offended and wronged, does look to this court to see that his life shall not be forfeited except upon sufficient ground, although he has presented no counsel at the bar of this court to advocate his cause, for men do not often voluntarily throw away their lives. It is moreover probable that the humane District Attorney, in view of the relations he sustains to the accused in all cases, as well as to the State, has done for him what the law makes the duty of the Clerk or Justices to do, viz, file the transcript with the Clerk of this court, (Rev. Stat., p. 163, sec. 28,) and so place the whole case before the court.

Perhaps it is in the power of this court to appoint counsel to defend the prisoner if he be without counsel, and to direct such counsel in an extraordinary case like the present, if need be, to file an assignment of errors. Const. Art. 103.

But this court has never refused before, so far as we are able to learn, to consider an appeal, because counsel was not present to represent the appellant in this court.

In the case of *De la Croix* v. *Villéré*, we reversed the judgment of the lower court, although no counsel appeared before us to argue the case or file a brief for the appellant. 11 An. 39.

In the case of *State* v. *Scott*, the appeal was filed by the appellee, and we reversed the judgment. 13 An.

In the case of the *State* v. *Hendry*, the District Attorney took the appeal, but did not present any points or cite any authorities. Yet this court considered the case and affirmed the judgment. 11 An. 207. We doubt not many other cases might be found to the same effect, where it is worth the while to examine the records in order to ascertain the same.

We see, therefore, nothing fatal in the objection that the accused does not appear here by counsel. The record is here (the prisoner being without power to appear), which the law makes the duty of its own officers to file, and the State demands our judgment upon the record which contains the appeal.

Under this state of facts, it seems to us that it is not the duty of this court *ex mero motu* to search the record in order to discover grounds, if such there be, which might have been made the basis of a dismissal of the appeal. If the State had desired a dismissal of the appeal, the District Attorney would never have filed the record. He would have taken out a certificate instead.

Again : it is said that this court can only investigate questions presented by bills of exception or assignments of error, and there being neither a bill of exception in the record nor assignment of error in this court, the appeal must be dismissed. Three cases are cited as authorities on this point, and we will consider them, after having examined the question as a constitutional question.

The Court of Errors and Appeals was the creature of the Legislature and derived its power from the Act of 1843. That Act gave it jurisdiction only of questions presented by bills of exception or assignment of errors apparent on the face of the record, taken and made in manner and form as then provided by law for appeals in civil cases. This court, on the contrary, is a Supreme Court, independent of the Legislature and deriving its powers from the Constitution alone. To that then, and not the repealed statute of 1843, we must look to ascertain whether it has jurisdiction of this case.

Art. 62 of the Constitution gives this court *appellate* jurisdiction only. It extends in all criminal cases to questions of law alone, whenever the offence charged is punishable with death or imprisonment at hard-labor, or when a fine exceeding three hundred dollars has actually been imposed.

This court then takes jurisdiction in virtue of an *appeal* and not by means of a writ of error. An appeal presents the case before the appellate court precisely as it was tried before the lower court, on both questions of fact and law. Story Const. 917 ; Tomlin Law Dic. verbo Appeal.

An appeal, then, on a question of law, presents the naked question of law to the appellate tribunal as it was presented to the inferior court (so far as the same can be separated from the facts), without any of the formalities required on a writ of error. On a writ of error, on the contrary, an assignment of errors was re-

quired, because it was in the nature of a declaration, and gave the superior tribunal cognizance of the grounds of complaint of the *actor*, the plaintiff in error. 2 Todd's Prac. 1107. On appeal, the position of parties remains the same as in the lower court; the plaintiff below is plaintiff here, and so of the defendant. Hence, no new pleadings are required in order to give the court cognizance of the case, and no assignment of errors is required to bring a criminal case before this court. The only question is, are the errors of law apparent upon the record? It is a maxim of the common law, *Boni judicis est ampliare jurisdictionem ;* although this maxim is not applicable here, still, we think, no part of the jurisdiction conferred on this court by the Constitution should be parted with. The Constitution declares the powers of the court to be appellate. It should not undertake to divest itself of its power given for the benefit of the citizen, and say that it can only examine errors apparent upon the face of the record when presented as a writ of error, viz, with new pleadings assigning such errors. But in prosecutions of slaves, only the substance of things is observed and technicalities are disregarded. In the forcible language of the law, *no proceedings shall be impeded by any errors of form.* Acts 1846, p. 115, sec. 14. Shall that be the practice on the part of the State only, and a more rigorous practice be exacted of the prisoner who has so little power to direct his defence?

But the statute directing the manner of taking the appeals, allows it to be taken as in civil cases, but no appeal bond nor security for costs is required. It makes it the duty of the *Clerk* to make out a copy of the record and transmit the same to the Supreme Court, and the Sheriff is to keep the accused in custody, *to abide such judgment* as may be rendered by the Supreme Court on appeal.

It is apparent that inasmuch as the testimony is never taken down by the Clerk in criminal cases, that the record cannot be certified, as in civil cases, to contain all the evidence. This was known to the framers of the Constitution when they conferred the appeal, and to the Legislature also when it authorized an appeal in criminal cases without giving bond. The Articles of the Code of Practice, which gives either party the right to require the Clerk to take down the testimony in civil cases, and to require him to certify the same to the Supreme Court, are not applicable to appeals in criminal cases, and it seems to us as a consequence that the appeal cannot be dismissed, because the appellant did not do an impossible thing. C. P. 601, 896, 897.

If in a civil case the Clerk certifies that the record contains all the evidence, the Supreme Court is required to examine all questions of law existing upon the record, without any bill of exception or assignment of errors, (12 Rob. 461,) and we cannot think the Constitution, when it conferred the right of appeal upon the accused in the class of criminal cases in which appeals are allowed, intended to confer an appeal less perfect than in civil cases.

The appeal intended to be granted, was a perfect appeal on all questions of law, reference being had to the manner in which the testimony is given before the jury.

But it is said there are cases in which this court has ruled that the appeal will be dismissed, unless there be a bill of exception or assignment of errors. We will examine those cited before we advert to the numerous cases on the other side.

The first case relied on is the case of the *State* v. *Fant*, 2 An. 837. There was an application for a *mandamus* to compel the District Judge to make *a statement of facts*. In reasoning on this branch of the case, Mr. Justice King said : " By the well known rules of criminal proceedings, the evidence introduced on the trial

before the jury is not reduced to writing, and if it were, we would be without authority to pronounce upon it. A statement of the facts proved on the trial would be only a substitute for the evidence itself, which we are not permitted to examine." He then says, the repeal of the Act of 1843, did not repeal the practice under it ; and he further makes the *obiter dictum* that questions of law should be presented by bills of exception or assignment of errors. The case, every one must admit, was correctly decided, and if he uses the term assignment of errors in the same sense that Mr. Justice Preston used it in the case of the *State* v. *Turner*, viz, the formal calling of the error to the notice of the court, the dictum was not absolutely incorrect. In *Turner's* case, the only assignment of errors was in the brief of counsel, and yet it is called an assignment of errors. 6 An. 310. And this was the case in the *State* v. *Kentuck*, 8 An. 308.

The next case cited is the case of the *State* v. *Nelson*, 3 An. 500. In this case, the entire evidence was certified, and Judge King, as the organ of the court, in refusing to examine the evidence in order to ascertain whether it was sufficient to sustain the conviction, made a *dictum* similar to that used by him in the case of *Fant*. It is apparent, therefore, that neither of these cases decides the point in controversy. They each *affirmed* the judgment of the lower court which they could not have done without jurisdiction.

The next case was that of the *State* v. *Bob*, 11 An. 192. Here the court did dismiss the appeal. But what else ? It considered every question raised on the record by the appellant and finding them all untenable, dismissed the appeal. The questions of law upon the record having been examined and decided, it was a matter of no moment to the accused, whether his appeal was dismissed or the judgment affirmed.

In the case of *Muldoon*, the appeal was dismissed, although the record contained a bill of exception. 9 An. 24.

It is on these unsatisfactory *dicta*, that the right to dismiss the appeal is based.

Now, opposed to these *dicta* (for with the exception of the last they cannot be called decisions), is the almost uniform practice of the court since its organization. We are able to present the following cases which were decided in this city. How many more have been decided, we are unable to say. In these which we cite, there were neither bills of exception nor assignments of error, and yet the judgments were either *reversed or affirmed, a thing impossible unless the court had jurisdiction*. *State* v. *Russell*, 2 An. 605 ; *State* v. *McDonald and Crosby*, 4 An. 434; *State* v. *Monasterio*, 4 An. 380 ; *State* v. *Stiles*, 5 An. 324 ; *State* v. *Smith*, 5 An. 340 ; *State* v. *Turner*, 6 An. 309 ; *State* v. *Capers*, 6 An. 267; same v. same, 6 An. 269 ; *State* v. *Eschars*, 7 An. 224; *State* v. *Glass*, Ib. 122 ; *State* v. *Kentuck*, a slave, 8 An. 308; *State* v. *Slave Dick*, 10 An. 461 ; *State* v. *Edson*, 10 An. 229 ; *State* v. *Harrison*, 11 An. 722 ; and *State* v. *Hendry*, 10 An. 207. See also *State* v. *Ellis*, 12 An. 390, and *State* v. *Clay*, 12 An. 431.

In the case of the *State* v. *Russell*, 2 An. 605, Judge King considered the sufficiency of the indictment and affirmed the judgment. He did the same in *Crosby's* case. 4 An. 434. In the case of *Monasterio*, the appeal was dismissed because the fine did not exceed three hundred dollars, and this was the only ground made by the Attorney General, an experienced and able lawyer, when there was neither bill of exception or assignment of error in the record.

In the case against *Stiles*, the court, through Chief Justice Eustis, its organ, examined at great length the sufficiency of the indictment without any assignment of errors or bill of exception, and reversed the judgment of the lower court.

5 An. 326. In the case of *Smith*, same vol. p. 340, the only errors urged were in the brief of counsel, and the court affirmed the decree of the lower court. In the case of the *State* v. *Hendry*, 10 An. 207, the appeal· was taken by the State, and Mr. Justice Spofford, as the organ of the court, after remarking that the District Attorney had taken the appeal and had not presented any points or cited any authorities, and that the court was not informed why he. conceived that any error had been committed to the prejudice of the State which could be remedied on appeal, proceeded to consider the case upon the argument of defendant's counsel, and *affirmed* the judgment of the lower court.

Even in civil proceedings, this court has not held Article 897 as applicable to all cases. In the case of *Wood* v. *Henderson*, 2 Ann. 220, it was held, that where the record shows that the judgment of the lower court was rendered on an exception to the petition on the ground of the insufficiency of the allegations to authorise the issuing of the injunction prayed for, and the exception was overruled, the court might examine the record without any statement of facts, bill of exceptions or assignment of error. Much more can this court consider the indictment where it charges no offence known to the law, and the accused is sentenced to death under it, and where the theory is that no one can be put in jeopardy of life or limb under a defective indictment. 10 An. 197.

If this court is obliged to dismiss the appeal for want of an assignment of errors, then the doctrine of all those cases where parties have been condemned to undergo a second trial for the insufficiency of the first indictment is *false*, and the accused was all the time in jeopardy of life or limb under the first.

In our opinion, the true doctrine as to the powers of this court was announced the first time the question was incidentally considered by the court, in this comprehensive language : " The framers of the Constitution obviously intended by this clause to grant to this tribunal power to revise questions of law which arise in prosecutions by indictment or information after a final judgment, and not to allow appeals from decisions made on questions arising in preliminary proceedings." But in the case before us, the judgment of the lower court was right ; the law requiring a reversal is subsequent to the decree and perhaps not a proper matter for the assignment of error. We, therefore, are of the opinion that the Constitution gives us jurisdiction of the case.

The record shows that the prisoner, having been found guilty of a capital offence, was, on the 7th day of March, 1857, condemned to be executed on the 10th day of April following.

The day fixed for the execution proving to be Good Friday, on application to the Governor, he directed the execution to be postponed until Friday, April 17, 1857. On the 16th day of April, the accused, by counsel, appealed.

We were informed by the District Attorney in his oral argument, that he himself placed the transcript on file, and he requested the court to fix another day for the execution of the prisoner.

On examination of the indictment and conviction, we find that the accused was charged with the crime of having, on the 30th day of January, 1857, willfully, maliciously and feloniously assaulted, struck, thrust, cut and stabbed his master, *John Robins*, with a large pocket knife, the same being a dangerous weapon, thereby inflicting several severe and dangerous wounds upon said *Robins*, with the intent to kill and murder said *Robins*.

He was convicted and sentenced on the seventh day of March, A. D. 1857.

The prisoner must have been convicted under some of the following provisions

STATE
*v.*
HENDERSON.

of law, viz : Nos. 9 and 15 of section 40 òf the Act of 1806 ; section 2 of 'he Act of 1814 ; section 3 of the Act of 1816 ; and the 6th section of the Act if 1843 ; Bullard & Curry, pp. 59, 60, 64 and 66 ; Acts 1843, p. 92.

The sections two, three and four of the Act of 1857, are on the same subj.ct-matter as the sections referred to, under which the prisoner must have been convicted. The forty-third section of the Act approved 19th of March, 1857 and promulgated the eighth day of May, of the same year, has repealed the of 'nce for which the prisoner has been convicted. There being no saving clause, it operates a general pardon of the accused, and he is entitled to the benefit of the statute, although passed subsequent to his conviction. It was so held in the case of the *State* v. *King*, 12 An. 593, and subsequent cases. See also case of *State* v. *Johnson*, 12 La. 547 ; Bishop's Crim. Law, sec. 103, 106.

We are, therefore, of the opinion, that the judgment of the lower court ought to be reversed and the prisoner discharged from custody.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment from which the appeal·in this case has been taken, be avoided and reversed ; and that the accused be discharged from legal custody.

COLE, J., concurring. Not deeming it necessary in the present case to express an opinion upon all the questions discussed in the opinion of the Chief Justice, I concur in his conclusion, on the ground that this court ought, *ex officio*, to notice the repeal of laws, and that it cannot affirm a judgment based on a repealed statute, and condemn one to death without legal authority. *State* v. *O'Conner*, 13 An.; *State* v. *King*, 12 An. 593.

BUCHANAN, J., concurred in the above opinion of Judge Cole.