State vs. Toups.

No. 1,419.

THE STATE OF LOUISIANA VS. JOSEPH TOUPS, ALIAS BELL.

1. The forfeiture of an appearance bond, or recognizance, is a criminal proceeding, and the appeal from the judgment of forfeiture is not to be tested by the rule applicable to civil actions.

2. In case there is no bill of exceptions in the record, and there has been no assignment of errors filed, relief can be granted, in a criminal case, only upon fatal defects being pointed out as apparent on the face of the papers.

3. If the record fail to disclose the existence of an order of a competent judge, authorizing the acceptance of a recognizance or appearance bond, the judgment of forfeiture must be pronounced null and void.

4. Such matter can not be considered as presenting a question of insufficiency of evidence on which the judgment is founded, but the *absence* from the record of matter absolutely essential to its validity, as matter of law.

APPEAL from the Eleventh District Court, Parish of Acadia. Perrault, J.

E. B. DuBuisson, District Attorney, for the State, Appellee.

J. N. Ogden for Defendant and Appellant.

ON MOTION TO DISMISS.

The opinion of the court was delivered by

WATKINS, J.   From a judgment forfeiting the appearance bond of a party charged in an indictment with the crime of larceny the

surety has appealed, and the State seeks to dismiss the appeal, on the ground that this court has no jurisdiction *ratione materiæ*, because such forfeiture is a *civil* matter, and the amount of the bond being only $250 it is below the lower limit of its constitutional cognizance.

This question has been frequently solved and definitely settled otherwise by the decisions of this court, and notably in the following, viz.: State vs. Cassidy, 7. An. 276; State vs. Williams, 37 An. 200; State vs. Hanson, 38 An. 299; State vs. Burns, 38 An. 363; State vs. Belize, 38 An. 543; State vs. Hendricks, 40 An. 719; State vs. Cornig, 42 An. 416.

In most, if not all, of the foregoing cases, the jurisdiction of this court was specially put at issue, and as invariably entertained.

It would seem manifest, under ordinary circumstances, that the salutary doctrine of *stare decisis* should be applied, and the agitation of the question put at rest; but as the zealous counsel of the State insists that it be reopened because "a leading case on the subject, which maintains a contrary doctrine, nowhere appears to have ever been brought to the attention of the courts," referring to Pearce vs. Morgan, 3 La. 342, from which counsel draws the conclusion that the later decisions are clearly erroneous and evidently founded on what he terms an *obiter dictum* of the court, expressed in State vs. Cassidy, 7 An. 276, and which has been followed ever since without question.

In view of this exceptionally strong statement, we feel it incumbent on us to review the question again, and determine it as *res nova*.

Recurring to the case of Pearce vs. Morgan we find it stated to be an injunction against an execution of a criminal recognizance, which was issued by the Criminal Court of New Orleans, and the complaint of the proceedings in forfeiture was "that the recognizance being an obligation for the payment of money, the *Criminal Court* could not entertain jurisdiction," hence, as stated by the court, "the questions presented by the cause relate to the jurisdiction of the court established for the trial of crimes and misdemeanors" under legislative acts of 1818 and 1819. In our view that case presents an altogether different question of jurisdiction from the one presented here, and the law at that time governing forfeiture proceedings was different from the law controlling the instant case, as will readily appear from the opinion, from which we extract the following, viz.:

"The judgment rendered in the Criminal Court  *  *  was against

57

a surety on a bond, or, recognizance for the appearance before that court, of a person charged with a crime. The condition of that instrument not having been complied with, principal and sureties were legally subjected to pay the penalty (and) they incurred a loss to that amount, recoverable from them for the use of the State. In legal process the recognizance was forfeited. But was this forfeiture a consequence of crime? Certainly not direct and immediate. It was only a remote consequence of the alleged crime, and makes no part of that offence."

The court then proceeded to examine the organization acts of the Criminal Court, and found that they conferred upon it "no power to try any civil suit," and held that "the fines and forfeitures" which it could *adjudge* were those only having "reference to judgments directly as punishments for crimes and offences." And the court then proceeds to say:

" It may be true that pursuits against sureties, in bail bonds and recognizances for the appearance of persons accused of crimes, take their origin from criminal prosecutions, but the forfeiture arising from the violation of the conditions of these obligations does not render the obligors criminal in the general acceptation of that word. They become simply debtors to the State, and should be pursued as such according to the modes pointed out by law. A pursuit of this nature is *not necessarily* an incident or accessory of the criminal prosecution; it is a mere *consequence of the latter, flowing not directly from it,* but from a breach of the conditions of the bond, *and resolves itself into a civil suit,* and being such the court of criminal jurisdiction, *in con-. sequence of its limited powers* can not legally take cognizance of it, *further than to declare the* bond or recognizance forfeited, *and thereby subject the obligors to be pursued for a recovery of the penalty in a court of civil jurisdiction, either by ordinary or summary powers, as may be ordained by law.*"

The court emphasizes the foregoing analysis of the law by this observation, viz.:

" The inconvenience which results from the necessity of transferring to a court of civil jurisdiction, bail bonds and recognizances taken in criminal cases which may have been forfeited will be felt in no other part of the State except the first judicial district, as all other courts have both criminal and civil jurisdiction. It is an inconvenience, however, that might have been prevented by power to

that effect granted in the institution of the criminal court of this district, and may yet be remedied by legislative interference, in according to *that* court civil jurisdiction in relation to the recovery of debts. due to the State on account of forfeitures of bonds and recognizances taken in any prosecution for offences against public justice," etc.

The foregoing extracts from that case clearly demonstrate the following propositions: (1) that in default of the appearance of the accused, the principal and surety are legally subject to pay the penalty of the bond; (2) that this penalty is not the direct and immediate, but remote *consequence* of the crime charged, and not a part of it, and the forfeiture does not render the obligor criminal, but charges him as a debtor of the State; (3) that a proceeding of this kind is not *necessarily* an incident or accessory of the criminal proceeding or prosecution, but a consequence of the latter, though not flowing directly from it; resolving itself into a civil proceeding, such as a criminal court of limited jurisdiction and powers can not take cognizance of, save and except to declare the forfeiture, and leave the obligor subject to pursuit for the penalty in a court of civil jurisdiction.

The court draws a plain distinction between the power of the criminal court to *find* and *declare* a forfeiture of a bond and that of enforcing the judgment of forfeiture once it is rendered. It was the latter alone which the court denominated to be a *quasi* civil proceeding. But that distinction was based solely upon the absence from the legislative acts drawn in question of any authority conferred upon the Criminal Court to entertain such proceedings—the court expressing the opinion that this was only a temporary inconvenience which the Legislature could repair, and one which was experienced in no other part of the State, all other courts except the Criminal Court of the parish of Orleans possessing civil as well as criminal jurisdiction.

The law in force at that date provided that when a party was regularly called upon his recognizance and failed to appear a judgment *nisi* or preliminary decree of forfeiture should be entered up in the criminal case, and that in order that same be made final and exigible, a rule must be taken upon the defaulting parties "to show cause why a *final* judgment should not be entered up." State vs. Frith, 14 La. 191.

But the Legislature of 1837 so amended prior statutes in reference to recovery of the amount of bonds and recognizances in criminal

cases as to authorize the courts having cognizance of such cases, upon the failure of the parties to respond when called upon, "to *forthwith* enter up judgment against both principal and securities *in solido*, for the full amount of the bond," etc. ˙ Sec. 1, Act 104 of 1837.˙.

This statute was re-enacted in 1855, and has since been embodied in the Revised Statutes, under the title of " criminal proceedings," and it is the law of to-day.    R. S., Sec. 1032.

From this change in the law, there has resulted a corresponding change in the jurisprudence respecting the character of the proceedings; and the distinction made, in Pearce vs. Morgan, between the decree of forfeiture and the final judgment on the rule to show cause, has likewise ceased to exist—the court being empowered, on simple motion, to " forthwith enter up a judgment against principal and securities *in solido*," without any delay, or any rule to show cause.

This change is further illustrated by the provision of the Act of 1855, which makes it the duty of the *clerks* of District Courts to issue notices of. such judgments to the parties concerned, and to issue executions on such judgments; and it also makes it the duty of sheriffs to execute the same—thus relieving the Criminal Court from the performance of any *civil* function in connection therewith, subsequent to the rendition and signing of the judgment of forfeiture.

From the foregoing it clearly results that the judgment of forfeiture—the judgment *nisi* under the former, •as well as the judgment final of the latter law—constituted part of the proceedings in a criminal case, irrespective of what was said of the character of the proceeding and judgment on the ancient rule to show cause.

Prior to 1843, appeals were not permitted in criminal cases, the Constitution of 1812 having conferred on this court appellate jurisdiction in *civil* cases alone.    Art. IV, Sec. 3 Cons. 1812; State vs. Seeley, 41 An. 143.

But, under the Consitutions of 1845 and 1852, this court had jurisdiction " in *criminal cases*, upon questions of law alone, whenever the punishment of death or hard labor *may* be inflicted," etc., just as it has under the Constitution of 1879.    Art. 63, Const. 1845; Art. 62, Const. 1852; Art. 81, Const. 1879.

In Pearce vs. Morgan no doubt was expressed as to the constitutional power of the Legislature to confer such jurisdiction on a Criminal District Court, and no question could have been raised in that case, or any other arising prior to 1843, in· reference to appellate

jurisdiction in such a case, as none existed under the organic law of that time.

And as, even in that case, the court conceded the power and jurisdiction of the Criminal Court of New Orleans to *find and declare the forfeiture* of a recognizance, as a part, or incident, of the criminal prosecution, it seems necessarily to be likewise within the competency of such a court to find and render a judgment of forfeiture. under the less stringent provisions of the laws of 1837 and 1855.

This much being firmly established, has not this court, under its constitutional power to try " criminal cases," jurisdiction to examine. and revise the finding of the lower judge in such case?

Certainly it will not be claimed that an appeal changed in any manner the character of the case. The contrary has been expressly held.

Heirs of Beaud vs. Russ, 34 An. 315.

In this view we think it was entirely correct for the court to have said in State vs. Cassidy, 7 An. 273, that "the *forfeiture* of the bond by judgment has always been regarded as a criminal proceeding; and, whether criminal or civil, was obtained in this case in the mode pointed out by the act of the the 11th March, 1837, passed expressly for the purpose."

In State vs. Williams, 37 An. 200, this court merely repeated with approval what was said in Cassidy's case, that "the *forfeiture* of an appearance bond is a criminal proceeding;" and then added that " the appeal from the judgment of forfeiture is not to be tested by the rule applicable to civil actions.

" In criminal cases our jurisdiction comprehends only those where the punishment of death or imprisonment at hard labor may be inflicted or a fine of $300 is actually imposed; yet it is well settled that we have jurisdiction where the indictment for those offences has been quashed. The State may appeal therefrom, although no punishment has been awarded and no fine imposed. State vs. Ellis, 12 An. 390.

" So, when the *punishment awarded* is neither death nor imprisonment at hard labor, but of a grade whereof we have not jurisdiction, yet, if the *offence charged* be one for which either of those punishments *may* be inflicted, we have jurisdiction. State vs. Charles, 14 An. 650.

" Now the offence with which the defendant is charged is one that

gives jurisdiction, *because one of the jurisdictional punishments may be* inflicted on him, and that fact attracts jurisdiction to the appearance bond that was given in that criminal proceeding."

That opinion is clear, well expressed and strictly in keeping with antecedent decisions on the subject, and has been followed in subsequent cases.

It is worthy of note in this connection that the surety on an appearance bond is something more than a *simple obligor*, for " the principal is supposed to be in the bail's constant custody, and the former, being the latter's, jailor, may at any time surrender him to the custody of the law." Whar. Crim. Pl. and Prac., Sec. 62.

Hence the recognizance forms the evidence of that official custody of the surety, and his default in not complying therewith is proof of his unfaithfulness as a custodian of the accused; and while this default in not *per se* a criminal act punishable as such, yet it evidences a dereliction of duty to the court in that case on the part of the surety, and the resulting forfeiture thereof is its penalty, and which is, on that account, inseparable therefrom.

Counsel has cited us to the opinion of the Judges of the Third Circuit Court of Appeals in the case of State vs. Alexander, in which they entertained jurisdiction of a precisely similar judgment of forfeiture, on the theory that it was a *civil suit*, or proceeding—placing reliance upon State vs. Frith, *supra;* State vs. Desforges, 5 Rob. 259, and State vs. Ansly, 13 An. 299. The purport of those cases is that the surety upon a criminal recognizance "incurs a civil obligation."

That is conceded in all recent decisions upon the subject, in so far as the recognizance is considered *intrinsically;* but that fact is not considered as controlling the question jurisdictionally. For, in State vs. Hendricks, 40 An. 719, this court says: "*Intrinsically*, the proceeding may be viewed as civil in character. It is based upon a contract under private signature, on which a money judgment can be rendered, which may be executed on the issuance of a *fi. fa.* It is not a proceeding for the recovery of a fine inflicted for the commission of an offence. In so saying, we do not lose sight of the fact that it has been treated as a criminal proceeding in order to determine questions of jurisdiction in cases of appeals from judgments of forfeiture of bail bonds."

The preliminary question raised upon the motion to dismiss is whether or not the appeal is jurisdictionally well grounded, and the

ultimate question is the *effect* of the obligation that the State seeks to have enforced; and, as we have clearly demonstrated, the *ultimate effect* of the obligation can not determine the jurisdiction of this court to enjorce it. Therefore, conceding all that is claimed in the opinion of the Circuit Court, our jurisdiction can not be divested.

The additional point is made in the motion that the transcript is not full and complete, and that the clerk's certificate does not state it to be in the manner required by law. Notwithstanding the certificate is somewhat inartificially drawn, it seems to be sufficient for all necessary purposes.

Upon a careful and painstaking review of all the authorities bearing on the question, we are satisfied that the motion to dismiss is not well taken, and must be denied.

### On the Merits.

The only evidence approved and filed in the forfeiture proceedings was the appearance bond. It is of the usual form, and is conditioned for the appearance of the accused before the District Court of Acadia parish on the 5th of June, 1892, "and every succeeding day of every regular term of said court, to be thereafter holden until discharged, then and there to answer," etc., but there is nothing to show by what authority said bond was taken, although it bears this endorsement, to-wit:

"Taken and acknowledged at the parish of ———, this 14th of March, 1892, before me, A. C. Leonard, J. P."

From the judgment pronounced thereon the defendant surety has appealed, and assigns the following fatal errors apparent upon the face of the papers to defeat it, viz.:

1. That the execution of the bond was not proved.

2. No order of court was offered in evidence authorizing the issuance of the warrant of arrest, and the acceptance of the bond, or recognizance.

3. No amount was mentioned in the minutes showing the amount of the bond that the accused was to furnish.

To the consideration of these objections the district attorney urges the objection that, conceding this matter to be a criminal proceeding, and consequently within our jurisdiction, our opinion must be confined to the treatment and determination of questions of law alone, and that the objections urged involve questions of fact, and

can not, therefore, be considered in the absence of any bill of exceptions reserved, or assignment of error.

This precise question arose and was decided adversely to the present contention of the State's counsel in State vs. Balize, 38 An. 542, in which the following language was employed, viz.:

"We find in the record no bill of exceptions, and there has been no assignment of errors filed in this court. The only grounds upon which the appellant relies are stated in his counsel's brief, and they can only prevail if the defects complained of appear *upon the face of the papers*, and are in themselves sufficient in law to justify the reversal of the judgment."

One of the grounds assigned for the reversal of the judgment was "that the record did not show that the accused was released on bond in pursuance of the order of the judge, and that said bond is utterly void."

On an examination of the record, we ascertained that the appearance bond was taken without an order of court admitting the accused to bail, or fixing the amount of the bond, and declared that, in the absence of such proof, the judgment of forfeiture, as a matter of law, was a nullity; citing State vs. Longiman, 6 An. 700; State vs. Craig, 12 An. 224; State vs. Smith, 12 An. 349, and State vs. Gilbert, 10 An. 532.

It is evident that it was not a matter of the *sufficiency of evidence* that controlled our decision, but the absence from the *record* of matter absolutely essential, as a question of law, to the validity of this bond, and without which there could be no legal forfeiture thereof.

Those decisions control the decision of the question under consideration here. Referring to State vs. Gilbert, 10 An. 532, we find it to be predicated on State vs. Clendennin, 6 An. 744; State vs. Longiman, 6 An. 700; State vs. Harper, 3 An. 598; State vs. Hayes, 4 An. 59; State vs. Jones, 3 An. 10, and State vs. Sewell, 3 An. 575.

The further point is made by the district attorney "that the bond shows upon its face that it was taken and acknowledged before a justice of the peace, and, of course, an order of the justice to himself would have been meaningless."

It is true that a justice of the peace is authorized by law, in a *certain class of cases*, to receive complaints and cause accused persons to be arrested, but the law specially provides that if the crime charged be one that may subject the party to capital punishment, or

State vs. Toups.

to imprisonment in the penitentiary, he must be carried before the judge of the district for examination and bond. R. S., Sec. 1010.

The accused defendant being charged with larceny, it was the province of the district judge to have heard the complaint, made the examination and taken and approved the bond.

As it is not pretended that the *judge* of the District Court had authorized the justice of the peace, or any other officer, to take and approve the bond, and it is evident he did not take and approve it himself, it is manifestly void, and the judgment of forfeiture based thereon is likewise void.

Following precedents, we hold that, upon the face of the record, the judgment is without any foundation in law and must be reversed.

The clerk of this court has prepared and filed a rule on the parties to the record, to show cause why they should not be taxed with costs.

Viewing this as a *quasi* criminal proceeding, they can not be thus taxed, and the rule must be discharged.

It is therefore ordered and decreed that the judgment appealed from be annulled and reversed, and it is now ordered that there be final judgment in favor of the defendant and appellant, and that he be relieved from payment of costs.