BREAUX, C. J.
The defendants, O. E. J. Dudley, William Chapman, and Alee Broussard were charged on the 27th day of November, 1908, in a bill of information presented by the district attorney to the district court at Lake Charles, with having unlawfully shipped and sent out of the parish, on the 23d day of November, 90 wild ducks.
The information further charged that the barrels containing these birds did not have attached to them a certificate of the deputy game warden for the parish of Calcasieu showing authority to ship the birds out of the parish.
The defendant'Dudley alone filed a demurrer.
His contention was that Act No. 207, p. 311, of the Legislature of 1908, was repealed by Act No. 277, p. 405, of the same session.
He urged further that he was denied due process of law; that he was restrained from engaging in a lawful occupation and interfered with in his personal rights; that the state statute covering the subject-matter was enlarged and requirements added to- it, all in violation of the state and federal Constitutions.
Defendant was found guilty, condemned to pay $25, and in default of payment to imprisonment for 30 days.
Motion to dismiss the appeal.
The grounds of appellee were that the defendant did not file a formal bill of exceptions to the decision -of the lower court overruling defendant’s demand.
The defendant urged that the error is apparent on the face of the record, and that it can be brought up without the necessity of a formal bill of exceptions.
The defense is based on the Constitution and the asserted illegality of the statute and ordinance in accordance with which it was drawn.
The errors are apparent on the face of the record, and the grounds urged in the demurrer may be brought up without a bill of exceptions. An assignment of error would have sufficed here to bring up the point. The demurrer has, at least, the effect of such an assignment.
The following decisions are in point; State v. Hayes, 104 La. 462, 29 South. 22; State v. Cox, 52 La. Ann. 2049, 28 South. 356; State v. Johnson, 51 La. Ann. 1648, 26 South. 437; State v. Hanks, 38 La. Ann. 468; State v. Toups, 44 La. Ann. 896, 11 South. 524; State v. Balize, 38 La. Ann. 542; State v. Forrest, 23 La. Ann. 433; State v. Henderson, 13 La. Ann. 489.
A similar question regarding jurisdiction arose in State v. Miller, 41 La. Ann. 53, 5 South. 258, 7 South. 672.
The grounds being sufficiently before us, we will not dismiss the appeal.
Motion to dismiss overruled.
The defendant Dudley alone filed a demurrer.
His contention was that Act No. 277, p. 405, of the Legislature of 1908 in effect repealed Act No. 207, p. 311, of the same session; that the ordinance of the police jury adopted under Act No. 207 was illegal.
He was tried before the district court, found guilty, and condemned to pay a fine of $25, and imprisonment in default of payment.
Under the influence that prevails in a number of the American states, the Louisiana Legislature adopted at its last session statutes regarding the feathered tribes. One of these statutes passed the Legislature on one day, and the other on the next.
We have considered the asserted repealing effect of Act No. 277, p. 405.
The first act (No. 207) is short.
*439 It authorizes police juries to regulate the shipping of game; that is all.
Under that act, the police jury of Calcasieu adopted an ordinance to regulate, as the title sets forth, the shipment of game birds from that parish. The first section of the ordinance makes it unlawful for any one to ship or send out of the parish over 12 game birds in any calendar day.
It follows this provision with the prohibition directed against common carriers from receiving and transporting over that number (12 of game birds on any calendar day, and it ordains that to each package or receptacle containing not over 12 birds there shall be attached an affidavit of the owner of the birds showing the species and the number of birds in the package, the names of the consignor and of the consignee.
This ordinance also contains a provision for inspecting the birds, and for a certificate stating, among other things, that the shipper is authorized to receive the package for shipment. The certificate of the game warden is also required in order that the common carrier may receive the package for shipment.
The next section of the ordinance makes its violation a misdemeanor, and provides a fine or imprisonment, different from the fine and imprisonment imposed by cited act above (No. 277).
The illegality of the ordinance will be considered later.
Before passing upon the effect of the last statute (No. 277) on the statute prior, we make a summary of the sections of the last, with the following result:
The first section provides that birds within the limits of the state are her property, save that, by killing them (when their killing is permitted) to the number of 25, they may ■“be used by any person at the time, iii the manner and for the traillóse expressly authorized.” Section 1 of the act.
The act further provides in its first section that any person catching, killing, taking, shipping, or having birds in his possession or under control in any manner prohibited by the act shall be made to lose all rights to the birds.
The act further makes it unlawful for any person to kill over 25 birds mentioned in section 3 of the act in any one day during the open season.
It also provides that all packages containing dead game birds, when shipped within the state, shall be plainly marked with the name of the consignor and of the consignee, with an itemized' statement of the number of birds and the names of the species. Section 11 of the act.
There are a number of other provisions contained in this statute. It is not considered necessary to refer to them all, as they are not all pertinent to the issues here.
We have noted the number of birds — 25. This statute is permissive to that extent; they become private property; no one has a right to interfere unless the statute has been violated; they rest in the owner; they are his to dispose of and control as he chooses. There is no authority in a subordinate political division to impose a limit whereby ownership is interfered with by prohibiting that they shall be shipped at all or taken as freight across the parish lines.
The license of the state grants the right to hunt in any part of the state. If one crossing the line should be fortunate enough to kill 25 birds in conformity with the statute, he cannot well be denied the privilege of forwarding them as freight to whomsoever he pleases within the state. Otherwise it might happen that at least 13 of the birds would be of very little use; unless he wore moved by the wanton desire of destroying, he would limit the number of birds in his hunt to 12. He would not kill only for the purpose of throwing away the birds. The local au *441 thorities would in effect limit the number to 12; this, although the statute declares that 25 is the number. In fact, No. 12 — -12 birds— is a discordant note which breaks the harmony of law and disturbs the plan of the statute (No. 277).
The contention is, on the part of the state, that the police jury’s action is authorized by the first act — that is, Act No. 207 — which delegates to that body the authority to regulate the shipment of game.
As relates to regulation and the authority it confers, the following definition is in point:
“A power to regulate does not properly include the power to suppress or prohibit; for the very essence of regulation is something to be regulated.”
If the local authority prohibits the shipping of the owner’s birds, it amounts to a prohibition at any rate to the number 13 of the 25. If the police jury has the right to limit the number to 12, it has the right to limit it to 1. Indeed, why not repeal the statute?
But the power to regulate does not invest a subordinate political division with authority to adopt ordinances to prevent the shipment in packages after the packages have been clearly marked with the names of the consignor and consignee and the other requirements have been complied with. No ordinance can be valid which, under the guise of regulation or an attempt at regulating, superadds interfering rules with the execution of a state statute.
Now, as relates to shipping the birds:
The statute provides in one place by direct implication that, after compliance with its requirement, birds may be shipped. To quote the words of the statute, “And whenever any person ‘kills’ and ‘ships’ any of the birds mentioned in this act at any time or in any manner prohibited by this act,” loss is the result if the ordinance of the police jury remains in force. See section 11 of the act, and paragraph 2 of section 1.
The inference is direct, and even unavoidable. If the person does not fall within the-prohibition of the act, the person has authority to ship.
In another part of the act it is stated “that any package otherwise shipped may be confiscated by any warden or duly authorized officer.” (Italics ours.)
These words have a meaning. If they are-shipped otherwise than as provided, the act is a misdemeanor. But if shipped as provided by the act, it is entirely different in its effect.
The statute prohibits any one from shipping the birds beyond the confines of the-state. There is no prohibition of shipment within the state, provided the statute is complied with. To have the authority to prohibit such shipment, the police jury would have to be more directly empowered than it is, and the statute, No. 277, upon the subject. far less expressive than it is.
It was not the intention of the Legislature-to accord a right and at the same time place it within the power of one of the political subdivisions to curtail or prohibit the right.
Such is the conflict between the ordinance- and the last statute, No. 277, cited supra, that we cannot do otherwise than to declare the-ordinance illegal, and, as it is the basis upon which the prosecution was presented, the-sentence and judgment must be annulled.
As relates to the repeal of the first statute by the second, we have this to say: Act No. 207 certainly has every appearance practically of relating to the same subject-matter as-statute No. 277. Very little can be done under the former which does not fall within the-terms of the second statute. - Such is the conflict of the first statute with the second that it can only prove a discordant element if an attempt is made to enforce it, particularly by the adoption of such an ordinance as the-one now before us.
Furthermore, it is elementary that a stat- *443 Lite has the effect of repealing a repugnant statute by implication. ' Further, that provisions destructive the one of the other cannot both stand; that conflicting penalties are at times confusing. The last law covers the subject entirely, the whole purpose, as we think. It expresses the legislative intent, and, to our thinking, takes all vitality from the first statute.
The following on the subject of repeal of statutes are pertinent: Sedgwick, p. 125; Endlich, p. 269; King v. Cornell, 106 U. S. 395, 1 Sup. Ct. 312, 27 L. Ed. 60; State ex rel. Jarvo v. Judge, 37 La. Ann. 581; Sedgwick, pp. 100, 104; State v. Henderson, 120 La. 542, 45 South. 430; State v. Burns, 45 La. Ann. 35, 11 South. 878; Sheriff v. Gall & Pharr, 43 La. Ann. 961, 10 South. 5.
The object of the state being to protect her •birds (an object which must meet with the approval of the friends of living things), we have not discovered that the object can be accompli', hod under discordant and conflicting statutes. The last must prevail.
That leaves very little usefulness, if any, to be accomplished under the first statute.
For reasons stated, the sentence and judgment of the lower court are annulled, avoided, and reversed. The defendant is discharged, and his bond canceled.
LAND, J. I concur in the decree.
PROVOSTY, J., dissents.