(83 South. 419)

No. 23794.

STATE v. BELL.

(Dec. 1, 1919.)

*(Syllabus by Editorial Staff.)*

1. CRIMINAL LAW ⟲⟹1090(12)—NECESSITY OF FORMAL BILLS OF EXCEPTION.

.Where, on appeal in a murder prosecution, certain rulings in calling tales jurors, referred to in defendant's brief are not brought up on formal bills of exception, they will not be considered unless they disclose fatal error on the face of the record.

2. CRIMINAL LAW ⟲⟹1092(14), 1119(4)—SUFFICIENCY OF EXCEPTION TO ARGUMENT OF DISTRICT ATTORNEY.

An argument by the district attorney in a murder trial comparing the defendant to a rattlesnake and anaconda will not be considered on appeal, where the bill of exceptions fails to set out such matter, but merely recited that the verdict was contrary to law and evidence, and it has not been verified by the approval of the judge.

3. JURY ⟲⟹110(9)—WAIVER OF IRREGULARITIES IN DRAWING TALESMEN BY FAILURE TO OBJECT.

Where in a prosecution for murder the regular venire has been exhausted, and three names are drawn from the tales box, but not placed in the jury box, from which the last juror is drawn, the defendant's consent to calling talesmen from the courtroom and his failure to object to the manner of proceeding constitutes a waiver of the irregularity.

Appeal from Third Judicial District Court, Parish of Claiborne; J. E. Reynolds, Judge.

Jesse Bell was convicted of murder, and he appeals. Affirmed.

McClendon & McClendon and Morelock & Seals, all of Homer, for appellant.

A. V. Coco, Atty. Gen., and T. T. Land, Dist. Atty., of Homer (T. Semmes Walmsley, of New Orleans, of counsel), for the State.

DAWKINS, J. Defendant appeals from a conviction and sentence of death for murder. We find two bills of exception in the record, to wit:

(1) Reserved to the overruling of the motion for a new trial.

(2) Reserved to certain remarks or statements by the district attorney in his closing argument to the jury.

[1] The brief of defendant's counsel also directs attention to certain rulings by the trial court in calling tales jurors, but those matters are not brought up on formal bills of exception, and, unless they disclose fatal error on the face of the record, we, of course, cannot consider them. State v. Toups, alias Bell, 44 La. Ann. 896, 11 South. 524.

Bill of Exceptions No. 1.

The motion for the new trial was based upon the contention that the verdict was contrary to the law and the evidence, and upon the further allegation:

That the district attorney had in his closing argument "compared the defendant to a rattlesnake and then apologized to the rattlesnake for making the comparison, by stating that, in substance, as follows: 'The rattlesnake always warns his victim. This man, Jesse Bell, gave no warning, but struck his victim while wrapt in slumber.' The district attorney then compared the defendant to the anaconda, which 'conceals itself in the branches of the trees and springs upon its victim without warning and crushes the life out.' Which statements were unwarranted by the evidence in the case, and were extremely unfair and prejudicial to the defendant's cause." Further, that the district attorney had in said closing argument made the

statement that the defendant shot the deceased in the back while asleep, which statement defendant alleged was not supported by the evidence.

[2] The bill of exceptions retained to the overruling of this motion recites only the matter of the verdict having been contrary to the law and the evidence, and the latter statement of the counsel for the state; that is, that defendant had shot deceased, while he, the deceased, was lying down and asleep. Therefore the alleged rattlesnake and anaconda comparisons, not appearing in the bill, and not being verified by the approval of the judge, are not before us for consideration.

The mere allegation that the verdict was contrary to the law and the evidence, we have uniformly held, presents nothing for us to review.

As to the statement of the district attorney that accused shot the deceased while lying down and asleep, the court's per curiam informs us that—

"There had been evidence pro and con on that point, and the argument was a legitimate conclusion to be drawn from the evidence presented upon the trial."

Having no other legal information as to what the evidence showed, we have to take the judge's statement of it, and that disposes of the bill.

We find no conflict between the minute entry of what was said by the district attorney and the per curiam of the court, even if we were compelled to accept the former. However, the entry by the clerk in no wise complied with the provisions of Act. No. 113 of 1896, but appears among the minutes of October 18, 1919, four days after the trial was had on October 14th, and was apparently recited as the clerk's recollection of what was said when the bill of exceptions was presented for signing by the judge; or it may not have been intended at all as the clerk's declaration of what took place, but merely to show the basis of the bill.

## Bill of Exceptions No. 2.

This bill presents the identical matter with reference to the remarks of the counsel for the state covered by bill of exceptions No. 1, and is disposed of by the ruling therein.

As to the rulings of the trial court in the drawing of tales jurors, the only matter in the record bearing thereon is the following quoted from the minutes of October 14, 1919, the day of the trial, to wit:

"In impaneling this jury, the regular panel was exhausted, whereupon the court ordered the tales jury box produced in the courtroom, and from said tales jury box the clerk to draw therefrom the names of 20 tales jurors, from whom the panel ordered should be completed, and the clerk drew from said box the following 20 names as ordered: [Here appear the names of those so drawn.]

"The sheriff immediately summoned from said list and caused to appear in court Miller Monk, John Meadors, and F. W. Barnette. Upon agreement of counsel for the state and defendant, the court directed the sheriff to summon from among the bystanders in the courtroom 10 additional tales jurors for the purpose of completing the panel called to try this case, and the sheriff immediately summoned the following: [Here follow the 10 names called from the bystanders.]

"The names of the last 10 tales jurors were written on slips of paper and placed in the jury box, and the impaneling of the jury was proceeded with, and from among the jurors called the state challenged peremptorily one juror, namely, John A. Harris.

"The defendant through counsel challenged peremptorily" 12 names which are given and one for cause, making in all 13.

"When of the 20 tales jurors taken from the tales jury box by the clerk as ordered by the court the sheriff reported present in the courtroom John Meadors, F. W. Barnette, and Miller Monk, the court ordered the trial proceeded with, and the defendant by counsel objected to the execution of the order by the court, when only 3 of said tales jurors had been summoned, and reserves a bill of exceptions to such order of the court, it being at this juncture that the additional 10 tales jurors were ordered under agreement of counsel, and the juror Aub Dawson being selected from among said 10 talesmen so called.

"The panel of 12 jurors having been selected and sworn, the case was * * * begun and proceeded with to conclusion thereof."

The above minute entry is so confused, it is hard to tell just what took place. Reading the first part of it, beginning at the top of page 6 of the transcript, it recites that, the regular venire having been exhausted, the tales jury box was opened under the order of the court, and 20 names drawn therefrom, which are given; that of those whose names were so drawn the sheriff summoned and caused to appear 3, whose names are also given; that by agreement of counsel the court directed the sheriff to summon 10 additional talesmen from the bystanders in the courtroom, whose names are likewise given; that the names of the 10 so drawn were written on slips of paper and placed in the jury box; that the impaneling of the jury was proceeded with, and "from among the jurors called" the state challenged one and the defense 12, peremptorily, and the defense one for cause. However, not one of the 3 names taken from the box and reported present, or of the 10 called from the bystanders, appears among the list of 14 so challenged.

The minute entry then again recites that from the 20 names ordered drawn from the box the 3 persons whose names are given above, to wit, Meadors, Barnette, and Monk, were reported present, the court ordered the trial proceeded with, when counsel for defendant objected because only 3 had been summoned, and "reserves a bill of exceptions to such order of the court," and that it was "at this juncture that the additional 10 tales jurors were ordered under agreement of counsel, and the juror Aub Dawson being selected from among said 10 talesmen so called."

[3] From this confusion, as above stated, it is hard to determine just what was done, but, after studying and dissecting the entry, we conclude that the defendant had exhausted all of his 12 peremptory challenges upon members of the regular venire, since none of the names so challenged appear among those taken from the tales box or called from the bystanders. We next assume that, when only 3 of the talesmen drawn from the box appeared, the defendant objected to proceeding with that small number present, and that it was then agreed that bystanders be called in accordance with the provisions of Act No. 122 of 1916, and that the names of all 13 were placed in the box, and the juror Aub Dawson, who was among those called from the bystanders, was drawn as the twelfth juror, the other 11 having been chosen from the regular venire. If this be true, or even if the 3 taken from the tales box were not included among those placed in the jury box, and from which the last juror was drawn, when the defendant consented to the calling of the talesmen from the courtroom, and made no further objection to the manner of proceeding, it would seem that he undoubtedly waived whatever rights he might have had under the court's original order directing the trial to proceed with only 3 of the 20 talesmen drawn from the box present. In any event the order complained of was not executed, and the defendant was not injured thereby.

For the reasons assigned, the judgment appealed from is affirmed.