ODOM, J.
 

 Defendant was convicted of murder and appealed. He presents two bills of exception. Bill No. 1 was reserved to the ruling of the court refusing a new trial. The only ground set up in the motion for new trial is that the verdict rendered by the jury was contrary to the law and the evidence. The judge, in his per curiam to this bill, said: “The mo-' tion presents only a question of fact. The court overruled it because in the opinion of the court, the verdict was not contrary to the law and the evidence.”
 

 Motions for new trials in criminal cases based solely upon the allegation that the verdict is contrary to the law and the evidence present nothing for review. State v. Bell, 146 La. 89, 83 So. 419; State v. Walters, 145 La. 209, 82 So. 197; State v. Shearer, 174 La. 142, 140 So. 4; State v. Calloway, 174 La. 134, 140 So. 2; State v. Wheeler, 173 La. 753, 138 So. 656.
 

 “Neither the appellate nor supervisory jurisdiction- of the Supreme Court can be invoked to review the granting or the refusal to grant a new trial except for error of law.” Article 516, Code of Criminal Procedure.
 

 (2) The state called Dr. Willis P. Butler, coroner of Caddo parish, to prove that defendant had made a confession to him. Counsel for defendant objected to the introduction of the confession on the ground that it waá not made freely and voluntarily. The- objection was overruled and Bill No. 2 was re served.
 

 The defendant admits that he made the confession to Dr. Butler in the presence of two of the sheriff’s deputies who took him from his cell in the jail to Dr. Butler’s office, but he says he was forced to make it. He goes into detail regarding the treatment he received from the date of his incarceration on August 15th to the date on which he made the confession to Dr. Butler on September 2d, seventeen days later. His testimony is to the effect that he was repeatedly told by the deputies that he must confess, and that, upon his refusal to do so, they stripped and brutally beat him. He says that just before he was carried to Dr. Butler’s office, where he made and signed the confession, he was beaten by the officers and told that he must confess.
 

 If this be true, the confession was not voluntarily made and should not have been admitted. Whether a confession be made before . or after the discovery of a crime, it is admissible if freely and voluntarily made, and inadmissible if not so made.
 

 As a condition precedent to the admission in evidence of an alleged confession made by one accused of the commission of a crime, the state must affirmatively show, if objection be timely made, that it was voluntarily made and not induced by fear, duress, intimidation, threats, or menaces, and not induced by promises or hopes held out of immunity or leniency. The mind of the accused must be free from fear or torture or punishment and uninfluenced by the hope of reward. A confession must be excluded if any degree of influence has been exerted to obtain it.
 

 In State v. Auguste et al., 50 La. Ann. 488,
 
 *699
 
 23 So. 612, 613, Mr. Justice Blanchard, speak ing for the court, said: “And the rule is comprehensive enough to exclude manifestations of compulsion, whether physical or moral, the resultant effect of which upon the mind is hope or fear, aptly described to be ‘an involuntary condition of mind.’ ”
 

 State v. Alexander, 109 La. 557, 33 So. 600, 601, is to the same effect, the court citing many cases from our own jurisdiction, as well as common-law text-writers. In the latter case, the court held “that the prosecution must show affirmatively that the confession was voluntary, and not made under improper influences.”
 

 State v. Bernard, 160 La. 9, 106 So. 656.
 

 The state, in order to show that the confession was voluntary, called Dr. Butler, the coroner, to whom it was made, and asked him to state the circumstances under which the accused made the statement, and he said that the accused was brought to his office by deputies Stone and Collins and that he said to the accused in the presence of the officers:
 

 “Henry, (meaning the accused) I guess you know that Arthur Williams died last night and Landrum is dead and Mr. Grant is getting better, and we are investigating all these eases in one. As you do know, you are one of the accused in one of the cases and as an accused you are not forced or required to make a statement unless you do so voluntarily or of your own free will and accord, and we can use it either for or against you in any way we see fit.”
 

 “Henry Lewis said that he wanted to make a statement and was then sworn.”
 

 Dr. Butler was asked if any threats were made or any force used or if there was any promise of reward or immunity held out to-the accused to induce him to make the statement, and he said there were not.
 

 Just what the accused then said to Dr-Butler in the presence of the deputies is not disclosed by the record. We do not know what the alleged “confession,” was. Whether it was an admission by the accused that he had killed Arthur Williams, whom he was-charged in the indictment with having murdered, or whether he had-some part in the killing of Landrum or the wounding of Mr. Grant does not appear. The coroner, in addressing the accused, mentioned the fact that Williams and Landrum were dead and “Mr.Grant is getting better and we are investigating all these cases in one. You do know you are one of the accused in one of the cases.”
 

 The accused was prosecuted for killing Arthur Williams, but whether he was then under indictment for that crime is not shown,. but it would appear that he was not, as the. coroner was investigating all the cases “in. one.” It may be that the accused intended his statement, whatever it was, to be exculpatory and for that reason wanted to make it, as Dr. Butler said he did. We mention this only as it relates to the question whether the so-called confession was voluntary or involuntary. Under the circumstances which we shall presently relate, it is very likely that the accused thought the statement which he-made would be favorable to his defense. If so, that is a very strong circumstance in favor of the state’s theory that it was made voluntarily.
 

 Counsel for the defendant have made na appearance in this court to argue the case orally, nor have they filed briefs. We therefore have not the benefit of their theory-
 
 *701
 
 But from the record and the brief filed by the state, we gather that two men were killed and another wounded in an affray the details of which are lacking, and that, in connection with the affair in a way not explained, some bank had lost certain valuable papers, which it was anxious to recover. When the accused was arrested, it appears, he voluntarily told the sheriff and his deputies that, if they would carry him to a scene on Cross Lake, which is near the city of Shreveport, he could find the papers. Sheriff Hughes said: “This nigger said he could find them, he could take us to the spot. He said the other niggers had the papers. He wanted to find the papers that the bank had lost.”
 

 The sheriff, with his deputies and Mr. Foster of the bank, all went with accused to the scene in search of the papers. It is not suggested that accused did not voluntarily state to the officers and Mr. Foster that he could find the papers if carried to the scene mentioned, and it may be that the confession made to Dr. Butler seventeen days later related to the whereabouts of these papers or to the accused’s knowledge of them. The statements made to the sheriff, his deputies, and the bank officials concerning the lost papers were unquestionably made voluntarily.
 

 The objection was to the introduction of the confession made to Dr. Butler in his office and the ground was that it was not voluntarily made for the reason, as stated by the accused, that, just prior to his making it, he had been whipped by officers Stone and Collins and told that he must confess. These officers deny emphatically that they had on that day. or at any other time threatened or abused the prisoner and Dr. Butler says he was not threatened in his office. He says furthermore that he told the prisoner that he did not have to make any statement and warned him that any statement he made could be used for or against him and that the prisoner then stated he wanted.to make a statement*
 

 A confession made under such circumstances is unquestionably admissible in evidence in the absence of a reasonable showing that it was induced by something that had taken place immediately preceding the making of it and which was still operating on the mind of the accused as an influence. If an accused person in custody of officers is tortured by them for no other reason than that he does not confess and is told that he must do so and is. then carried before another person to whom he does confess, it cannot be said that such confession is voluntary even though no threats are made and no violence used in the presence of the person to whom the confession is made. This is for the reason that it will be presumed that the thoughts of the previous threats and ill treatment linger in the mind of the accused as an influence to induce the confession. It may well be imagined that an accused person, to please those who have him in custody, would rather make a confession than be returned to his cell and there have to undergo more of the kind of, torture previously inflicted upon him. If such thoughts are in his mind at the time the confession is made it is not voluntary.
 

 But in this case, we are not convinced that such condition existed. Defendant’s testimony as to such condition is not corroborated and there are circumstances which cast suspicion upon his story. For instance, he says he was beaten and told to confess, while at Cross Lake, by officers Stone, Best, and
 
 *703
 
 Prudhomme, and it is shown beyond question (hat Prudhomme was not in the party. Sheriff Hughes says he was not beaten so far as he knows and that they were not attempting to get a confession. That was not the purpose of going to Cross Lake, the purpose being to find the bank’s missing papers, which accused had voluntarily said he could find. Another circumstance is that notwithstanding accused testified that vhe-had been so beaten while in prison that it became necessary to call a physician, Dr. Paul, to treat his wounds, he did not call Dr. Paul to corroborate his statement. The state called Dr. Butler, to whom the confession was made, as well as the officers who defendant says threatened and abused him, to show that the confession was voluntary, and, according to these witnesses, the confession was voluntary and admissible. The defendant then attempted to show that it was not. If, as he says, Dr. Paul administered unto him while in prison, Dr. Paul was the one man whose testimony would have set atmaught that of the officers who said they had not beaten the prisoner', if indeed Dr. Paul had treated him. It was defendant’s duty to call Dr. Paul, if then within the jurisdiction of the court, and, if not, to account for his absence.
 

 Dr. Butler, the coroner, says he frequently visited the jail during defendant’s incarceration and saw him, and, while he did not say so, his testimony negatives the idea that he saw any indications that defendant was wounded or that' he had treated him.
 

 On the trial of the ease, which took place ten months after defendant was arrested, Dr. Butler was asked to make a statement with reference to scars, if any, he found on defendant’s body, tie said that a superficial examination “just made” disclosed a scar on the right elbow, one on the left shoulder, one to the right of the spinal column, between the shoulders, one on the right wrist, one in front of the left shoulder, one on the right arm, one just above the left hip bone, and an old scar left by an infected bubo.
 

 This testimony was offered by defendant to support or corroborate his own testimony that he had been wounded by the officers, but there is nothing whatever to show that the wounds which left the scars were inflicted by the officers, and we cannot assume that they were. Dr. Paul, according to plaintiff, was the only man who could have thrown any light upon this particular point, and he was not called.
 

 For the reasons assigned, the verdict and sentence are affirmed.