## STATE v. HENRY STOUDERMAN.

The domicil of the husband is also the domicil of the wife, and she has the right to call upon the police to protect her from violence even against her husband.

The police officers, for the purpose of preventing a felony or even a breach of the peace, may enter the dwelling house of the accused in the night time without a warrant and arrest him, provided his conduct was such at the time as to justify the belief that the perpetration of a felony or breach of the peace was intended.

Where the accusation of a crime includes an offence of an inferior degree, the jury may discharge the defendant of the higher crime and convict him of the minor one; but several offences created by different statutes cannot be embraced in one count.

On an indictment for an assault with the intent to commit murder, the jury may find the accused guilty of an assault with intent to kill.

APPEAL from the First District Court of New Orleans, *McHenry*, J. *Isaac Johnson*, Attorney General, for the State. *T. W. Collens*, for the appellant. The judgment of the court was pronounced by

PRESTON, J. The defendant was indicted for an assault with intent to commit the crime of murder; was convicted of an assault with intent to kill; was sentenced, and has appealed.

He relies for a reversal of the judgment against him on the following bill of exceptions: "Be it remembered, that on the trial of this case, after evidence and arguments of counsel, the accused, by his counsel, prayed the court to charge the jury as follows: 1. That the watchmen and police men of the city of New Orleans had no right forcibly to enter the private dwelling of a citizen in the night time, without a warrant, for the purpose of arresting and conveying him to prison, for the past commission of a misdemeanor, or under the apprehension that he might commit a misdemeanor. 2. That the report or declaration of a wife in the street, declaring that she feared that if she returned to the marital domicil, her husband might shoot or kill her, did not, in law authorize watchmen or policemen forcibly to enter the private residence of a resident citizen for the purpose of arresting him and conveying him to prison, without a warrant. 3. That should, in such a case, the officers enter said domicil, and then attempt to arrest the person complained of while he was quietly at supper, he has a right, after asking for their warrant, warning them not to advance upon him, informing them that in case of violence he would kill the agressor, and after retreating from room to room, and after his retreat was cut off, should the said officers (some of whom were armed with heavy clubs) forcibly attempt to take him, he had a right to oppose force by force, in defence of his domicil and person. 4. That it was only in case of persons caught in the actual or an impending commission of "felony," or of pursuit by hue and cry, that officers of the law could forcibly enter or break into a private domicil for the purpose of arresting an offender in the night time. 5. That the prisoner being charged under the 24th section of the act of 4th May, 1805, it was necessary that the circumstances which would amount to murder in law, except the death should exist in order to authorize the conviction under said statute, and that should the facts, in case of death, only have amounted to manslaughter, the prisoner could not be convicted under said statute.

"Which charge the court refused to give in the said terms; but the court charged as follows: On the first point, that if the jury were satisfied that the

wife of the accused represented to the police officers that her husband had threatened and attempted to take her life, and that he was armed with a knife or some other dangerous weapon, and still persisted in his threats to kill her, or do her some great bodily harm, that said police officers, for the purpose of preventing the commission of a felony, or even a breach of the peace, might enter the house of accused in the night time without a warrant and arrest him, provided his conduct was such at the time as to induce the belief that the representations of his wife were well founded. As to the second point, the court refused to give instructions required of it, for the reasons given in the instructions of the first point. As to the third point, the court charged the jury that if they were satisfied that the accused knew the persons who entered his house were police officers, and had been induced by the representations of his wife to come to his house to prevent a breach of the peace, it was the duty of the accused to submit to the police officers, and not to oppose them with violence; for that if the police officers transcended their duty the law afforded an ample remedy, and it was his duty to seek that remedy, and not to attempt to take the law into his own hands. Upon the fourth point, the court instructed the jury that if, in the night time, the attention of the police officers were directed to a house in consequence of the cry of murder, or any other alarm calculated to produce belief in the mind of a reasonable person that a high crime was about being committed, in the opinion of the court, it was the duty of the police officers to enter forcibly, if necessary, to prevent the commission of the crime and quail the disturbance. As to the fifth point, the court charged as requested, except that they might find him guilty of assault with intent to kill, should they be satisfied that he was guilty. To which refusal, and to said charge as given, the counsel took this his bill of exceptions, which is signed by the court. (Signed) JOHN McHENRY, Judge."

The first charge required was of a very general character, and might not have had a precise application to the case. It was the duty of the prisoner's counsel to have shown by his bill of exceptions, that he asked for instructions to the jury that would have had a material bearing on his case; and that he did not require the court to charge the jury upon abstract principles of law. The district judge supposed the precise case, we are bound to presume, which the prosecuting attorney contended he had fully established by evidence; and if the jury believed the facts supposed were true, the charge was clearly legal and appropriate. So, if the counsel of the accused had distinctly stated the facts he contended the evidence established, and then required the court to charge the jury, that if they believed those facts, the prisoner might lawfully have assaulted with intent to kill, in defence of his dwelling house or person, the violater of either, it would have been the duty of the judge to have instructed the jury whether those facts were or not a justification in law of the acts charged against the accused. But there was not this precise application to the case on trial in the charge required on behalf of the accused.

If the facts admitted in the second charge required, occurred in the night time, as the whole case indicates, and were accompanied with the qualification which the judge supposed, that the conduct of the husband was such at the time as to induce the belief that the representations of his wife were well founded, the judge was right in refusing the instructions required. The domicil of the husband is the domicil of the wife; she is entitled to enjoy it in peace and tranquility. The city watch were established peculiarly to preserve peace and tranquility in the night time when warrants cannot be procured from the

STATE
*v.*
STOUDERMAN.

magistrates to arrest peace-breakers. The report of the wife, that her peace was actually disturbed in the night time, when the offices of the magistrates were closed, and her life endangered in her own domicil, was sufficient to justify the officers in entering the house with her to protect her from violence in her domicil. And having ascertained that the peace was disturbed, and her life in danger, it was their duty to arrest the husband and convey him to the guard-house until the matter could be investigated by a magistrate, as required by the act of 1834, and by ordinances of the council. It cannot reasonably be denied that the facts, as stated, amounted to a disturbance of the peace; and the 7th section of this statute expressly authorized the guard to arrest without warrant a person caught in the act of disturbing the peace. Even at common law, it is well settled, that a constable may arrest any one for a breach of the peace in his presence, and keep him in his house or in the stocks until he can bring him before a magistrate. Archbold, 445. 1 Hale 487. Dalton says, the power may be exercised even for the prevention of a battery.

We are inclined to think, that the instruction on the fourth point, as asked, and as given, differ only in words and the manner of giving the charge. It is not pretended on behalf of the State, to justify the arrest, that a felony had been actually committed, nor that the prisoner was pursued by hue and cry for felony. Now, his counsel admits, that to prevent the impending commission of a felony, the officers might forcibly enter a private dwelling in the night time for the purpose of arresting the offender. Under our laws the term *felony* has not a precise meaning as at common law, the forfeiture of lands or goods having ceased to exist. The judge therefore used the term *high crimes* in its stead, and stated, that if the alarm given was calculated to produce a reasonable belief that a high crime was about being committed, it was the duty of the police officers to enter the house, forcibly if necessary, to prevent the commission of the crime, and quell the disturbance.

Now, there is abundant authority that a constable may arrest a man about to commit any act which would manifestly endanger another's life, and detain him until the intent be presumed to have ceased. Arch. 446. East, in his Pleas of the Crown, vol. 1, p. 306, says: It seems clear, that if one menace another to kill him, upon complaint thereof to the constable forthwith, he may, to avoid the present danger, arrest the party, and detain him till he can conveniently bring him to a justice of the peace. If so, the law must certainly justify the means necessary to make the arrest, as the forcible entry of a dwelling house. Indeed, it was expressly held, that any one may justify the breaking and entering a party's house, and imprisoning him, to prevent him from murdering his wife, who cries out for assistance. 2 B. & B. 260. This authority belongs to all peace officers such as watchmen, patrols, beadles, constables, bailiffs, justices of the peace, sheriffs and coroners, and is peculiarly intrusted by our statute and ordinances to watchmen in the night, because the danger is more imminent and the means of obtaining a warrant more difficult. The intention of our Legislature cannot be mistaken in providing for the police of our city, which is the resort in winter of such a vast concourse of heterogeneous population.

And in this whole case it is to be borne in mind, that the house was the house of the wife as well as of the husband, into which she had the same right with him to introduce the means of protecting herself from danger when he ceased to afford that protection, and especially when his conduct became the cause of her danger. In carefully considering the instructions of the district court, we find nothing in them not warranted by law. The inter-

pretation given of the legal powers of the city guard is indispensable to the energetic performance of their perilous duties, so necessary to the tranquility of our city and the protection of individuals.

It is lastly contended that the prisoner was prosecuted under the 24th section of the act of 1805, for an assault with intent to commit the crime of murder, and as the facts did not justify his conviction under that statute, he should not have been convicted of an assault with intent to kill, which is prohibited, not by the statute under which he was prosecuted, but by the 4th section of an act approved the 7th of February, 1829. The same acts which amount to a violation of the first statute when done with premeditation constitute an assault with intent to kill alone, if done without premeditation, and are punishable under the last statute.

It is a general rule of the common law, that where an accusation of a crime includes an offence of an inferior degree, the jury may discharge the defendant of the higher crime and convict him of the less atrocious. Thus, upon an indictment for murder, he may be convicted of manslaughter; accused of *grand*, the offence may be reduced by the verdict to *petit* larceny; prosecuted for robbery or burglary, he may be found guilty of theft alone. So, on an indictment on a statute, the defendant may be found guilty at common law in England.

Now, all crimes and offences in this State are made so by statute, and in their prosecution are to be governed by these principles of the common law. We have a statute against assaulting with intent to murder, and a statute against assaulting with intent to kill; and there is no reason why the principle should not apply that in prosecuting for the higher, which includes the lesser offence, the jury should not acquit of the former and convict for the latter.

It was proper for the district attorney to prosecute under the first statute, believing with the grand jury that the accused was guilty of an assault with intent to murder. The petty jury, not being able to find premeditation and malice, were bound to acquit the accused under that statute, but still might well find him guilty of an assault with an intent to kill, under the last statute. Thus there is a statute against murder and another against manslaughter. No one ever doubted that in a prosecution for murder under the first statute, the accused might be found guilty of manslaughter under the last. The case is precisely similar in principle with that before the court. No confusion was ever produced by convictions for manslaughter under prosecutions for murder. So the confusion apprehended by the prisoner's counsel, by convictions for assault with intent to kill under prosecutions for assaults with intent to murder, will not occur.

This general proposition is true, that several offences, created by different statutes, cannot be included in one count. But when the crime prohibited by one statute is greater in degree and includes the crime punished by the other statute, the greater crime denounced in a single count necessarily embraces the prosecution of the lesser crime, for which therefore the accused may be convicted under the count.

And the conclusion of the indictment must be against the statute in the singular, and not against the statutes in the plural; because, if the accused is guilty of the greater crime, the statute punishing it embraces the whole offence and merges the violation of the other statute; whilst if he did not commit the greater offence he violated only the statute against the lesser. In either case, the conclusion against the statute was the only proper conclusion of the indictment.

It is therefore decreed that the judgment of the district court be affirmed, with costs.