State vs. Moncla.

| 39 | 868 |
| 46 | 199 |
| 46 | 856 |
| 39 | 868 |
| 48 | 438 |
| 39 | 868 |
| 106 | 384 |
| 39 | 868 |
| 108 | 471 |
| 39 | 868 |
| 114 | 94 |

## No. 1287.

### THE STATE OF LOUISIANA VS. VICTOR MONCLA.

An order made by the judge, in course of a trial, in anticipation of the exhaustion of the regular jury panel, directing the sheriff to summon *tales* jurors and hold them to serve, if necessary, for the purpose of saving time and avoiding delay, is not illegal, and will not invalidate a jury formed from such talesmen tendered only after exhaustion of the regular panel.

When immediately after the swearing in of the complete jury, and before any further proceeding is taken, one of the jurors is incapacitated by illness from serving, the judge may excuse him and fill his place from the panel, particularly when the bill of exception exhibits no denial of any rights accruing to accused on account of such action.

While concomitant circumstances tending to explain a flight from justice, as arising from other motives than consciousness of guilt, are admissible, yet proof of subsequent return after some time, and submission to arrest are of doubtful admissibility, and at all events of too little weight to justify disturbance of judgment because excluded.

APPEAL from the Twelfth District Court, Parish of Avoyelles. *Overton*, J.

*John N. Ogden*, District Attorney, for the State, Appellee.

*Cullom & Barbin, Joffrion & Bordelon, A. V. Coco* and *J. H. Ducoté* for Defendant and Appellant.

The opinion of the Court was delivered by

FENNER, J. Defendant, convicted of larceny, and sentenced to one year's imprisonment in the penitentiary, assigns the following errors:

1. While the empaneling of the jury was in progress, and before

State vs. Moncla.

the regular venire had been exhausted, the judge, at the request of the State's attorney, ordered the sheriff to summon twenty-five *tales* jurors, to be ready for service if required. To this order the defendant objected, on the ground that "no talesmen could be ordered under the law, before the regular panel was exhausted."

The judge assigns the following reasons for his action : "There were in attendance upon the court a large number of witnesses from every portion of the parish, summoned by the defendant to testify in the matter of the motion of the State for a change of venue, which motion had just been disposed of. This case had already undergone two trials, had been much discussed, and great difficulty would have been experienced in getting *tales* jurors from the neighborhood. Feeling confident that the regular panel would be exhausted, and to save time and delay, I ordered the sheriff to summon twenty-five tales jurors, to serve as necessity might require."

The complaint of accused is not that jurymen *de talibus* were imposed on him before the regular panel was exhausted, but simply that the order for their summoning was issued before the panel was exhausted.

Had the jury been completed from the regular panel, the order would have been of no effect. As the panel was exhausted, the order simply served to secure the presence of by-standers, from whom the jury was lawfully completed.

We think the action of the court was proper under the circumstances, and fail to perceive any injury or abridgment of his legal rights resulting to defendant.

2. The next bill of exceptions recites that: "After the twelve jurors had been selected and empaneled to try the above cause, one of said jurors, viz: Christophe F. Bordelon, announced that he was sick. The judge ordered the discharge of the juror and caused the sheriff to call an additional juror to fill his place. Defendant's twelve challenges having been exhausted, defendant, through his attorney, objected to the discharge of the juror, and also to the order to fill his place, for the reason that the proceeding was irregular and not authorized by law." This took place immediately after the jury had been completed, and before the indictment had been read or any other proceeding had before the jury. It appears further, from the judge's statement, that the juror was only excused after being first sworn as to his illness and then examined by a physician, who confirmed his statement.

Defendant relies upon the following passage from Mr. Bishop's work on criminal procedure : "Where, during the trial, a juror is taken too

sick to proceed, this is a visitation of God which shows the prisoner never to have been in jeopardy, and he cannot claim to be discharged, though the hearing is here broken off. Still it is competent for the court to add another juryman returned in the panel ; but the prisoner should be offered his challenges over again as to the eleven; the eleven should be sworn *de novo,* and the trial begin again. Bishop' Cr. Proc., § 809.

We have not, at this place, access to the English authorities referred to by Mr. Bishop, but, from his own language, it appears to refer to cases where the sickness intervenes after the *hearing* has begun, and that in using the words " during the trial " he refers to proceedings before the jury after it has been impaneled and sworn."

This appears from the words: "Though the *hearing* is here broken off," and from the concluding phrase that the jury " should be sworn *de novo and the trial begin again,*" showing that the *trial* referred to is something occurring after the swearing of the jury.

This accords with reason, for he himself states  in the same section that if, while the jury is being made up, but before the list is completed, a particular juror is excused for sickness, the case stands on a different ground, and one more juror is simply elected in the usual course."

It is difficult to conceive of any reason why a different rule should prevail if a sworn juror should be taken sick when the eleventh juror is sworn, than if his sickness should happen immediately after the twelfth juror had been sworn, and before any other proceedings had been taken.

We should be loth to recognize so flimsy a distinction.

But under either rule, in this case, the bill discloses, on its face, no error. The objection was only to the discharge of the juror and to the calling of another to fill his place. The right of the judge to discharge the sick juror and to fill his place with another is distinctly recognized by Mr. Bishop in the very passage quoted; the only question is whether, in making such orders, he was bound to restore to accused his challenges and to swear the eleven anew. But the bill does not disclose that the prisoner asserted such rights and was denied them, nor even that the judge did not offer them. This, alone, is fatal to the bill, and such merely technical defenses, supported by no suggestion of injury to defendant, should be confined with the greatest strictness.

3. The next exception was to the exclusion of the following question, propounded on cross-examination to the sheriff, a witness for the State : " You have stated in your examination in chief that the ac-

cused fled from your custody and made his escape; please state whether he did not afterward return to this place, Marksville, and without any further arrest by you or your deputies?" The judge says: " The accused was permitted to show the circumstances attendant on his flight, such as that he was very much excited at the time, and his mother and brother advised him to it, and accordingly he made this proof. All this formed part of the *res gestæ*. The alleged fact that some time after his escape he returned to Marksville, and appeared on the public streets, without further arrest, does not form a part of the *res gestæ*, and was, therefore, inadmissible. The testimony showed that after escaping, the accused went to Natchez."

We are compelled to hold that the reason of the court for excluding the testimony is not sound, and that the principle of *res gestæ* has no application in this matter.

Under the humaner spirit of modern law the weight attributed by the old common law to flight from justice as a presumption of conscious guilt, has been greatly diminished. It is now merely regarded as a circumstance which, though " by no means strong enough by itself to warrant a conviction, yet may become one of a series of circumstances from which guilt may be inferred." Wharton Cr. Ev., § 750.

Other circumstances explaining the flight and tending to show that it was prompted by other motives than conscious guilt, may undoubtedly be proved. Wilson Cir. Ev., pp. 89, 90; 1 Bishop Cr. Proc.

It appears, however, that the accused was allowed to prove all the circumstances attending and surrounding his flight and having any tendency to show the motives operating on his mind at the time of his escape.

His subsequent voluntary return and submission to arrest certainly do not form a circumstance tending to show the motives which prompted his flight; and, even if not absolutely irrelevant, they were of so little weight that we should treat them as we did a like matter in a much graver case, where we said: " We are satisfied that it had no influence in the case, and that, even if the ruling were erroneous, it did not prejudice the fair trial of the accused, and would not justify us in disturbing the verdict." State vs. Melton, 37 Ann. 81.

There are other bills of exception in the record, which even defendant's counsel have ignored in their brief, and to which the remark last quoted is even more strongly applicable.

We can discover nothing in this record to show that defendant has not had a fair and legal trial, or has been deprived of any substantial right which could have aided him in his defense.

Judgment affirmed.