The opinion of the court was delivered by
Breaux, J.
The defendant, Michel Seossoni, was indicted by the grand jury for the parish of Orleans on the 7th day of April, 1896, for the murder of Prank D’Antonio, committed, it is charged, on the 18th day of February of that year. He was put on his trial on the 11th day of August, 1896, and was convicted of manslaughter, and his punishment fixed at ten years in the penitentiary. Several bills of. exceptions were reserved during the trial to the rulings of the court. A motion for,a new trial was filed; it was overruled and a bill reserved- , ■
Perhaps the best method of getting at the questions involved in this case is to give a substantial statement of the facts.
The defendant Seossoni, while in his house, early in the evening, . w^s murderously assaulted and shot by the deceased, who was his father-in-law. The deceased was arrested_ by some citizens and .placed, in charge of two police officers, who ,escorted, him to/.the *1466 nearest patrol box with the intention of sending him to the police station. The wounded man, after his wound had been dressed at a neighboring drug store, was taken by citizens who had him in charge, to the same patrol box, with the view, from there, to send him to the Charity Hospital in an ambulance. Not less than fifteen minutes, and not more than thirty minutes, elapsed from the time of the shooting until the accused and the deceased were brought undesignedly face to face at the patrol box.
At the moment the deceased and the accused met at the patrol box, a policeman testified that he held D’Antonio, the deceased, by one arm, while the other policeman was inside the patrol box sending in the call for the wagon.
Immediately after the meeting, the deceased raised his arms and shook his clinched fist at the accused, at the same time said with an opprobious oath: “You son----, you are not dead yet.”
The accused thereupon rushed toward D’Antonio and stabbed and slew him.
Upon this state of facts, the accused took bills of exceptions to the refusal of the judge to give special charges.
The court was requested in the first special charge to instruct the jury, viz.: “If they were satisfied from the evidence, that the de- “ ceased had attempted to assassinate the accused by secretly shoot- “ ing him through a glass door, while the accused was peaceably and “ lawfully in his own house, and that shortly thereafter they had ac- “ cidentally met, and from the motions and language of the deceased, “ the accused still bleeding and suffering from his wound, the accused “ believed and had reasonable ground to believe that the deceased in- “ tended again to attack him and take his life or do him great bodily “ harm, and that it was necessary to kill him in order to avoid the “ apprehended danger, the accused was justified in killing the “ deceased, although he was mistaken in the appearances, and “ although there was, in fact, no design on the part of the deceased “ to do him serious injury, nor any danger that it would be done.”
The judge declined to give this charge for reasons stated on the bill. They are substantially that the law of self-defence, as given by the court in its general charge copied on the bill, covered the principle of law involved in the request.
Attention is called by the defendant to the portions of the general *1467 charge italicized as objectionable. This charge being lengthy we only copy the paragraphs and sentences in which are the words to which objection is urged:
“ A man may repel force by force, even to the taking of human life against one or many who manifestly intend and endeavor by violence to commit a felony on his person.”
“ In a personal conflict it must appear that the accused was assaulted and, that this assault was of such a character that the accused had apparent reason to believe and did believe that his life, was in danger or that he was in danger of suffering great bodily harm at the hands of his assailant.
“ The degree of force in defence of one’s person must not exceed “ the bounds of prevention and defence. This will depend upon the ct circumstances of the case, that is, the character of the assault, taking “ into consideration the relative situation and condition of the parties. “ And in considering the danger to which one is subjected by an il assault, the law does not hold him to the same sound discretion and “ cool judgment that a juror is supposed to exercise in deliberating over “ the facts of the case. The jury should view the facts from the de- “ fendanVs standpoint.
* * * u jf^ under these circumstances, the assault was slight, or was not an assault, but merely insult and threats, by threats and angry motions not amounting to an assault, and the defendant’s life-was not in real or apparent danger,, nor his person in real or apparen danger of great bodily harm, if he intentionally killed his assailant-the crime would be murder. * * * If, however, his life was apparently in danger, although not really in danger, or his person apparently in danger of great bodily harm by the suddenness or violence of the assault, although not really in danger, and he really and honestly believed that his life was in danger, and he had apparently reasonable grounds for this belief, then if he slay his assailant it would be excusable homicide. The rule of law, briefly stated, is, the accused must have honestly believed in his danger at the time, and the evidence upon which he based that belief must have been reasonable and must have been such as would have induced such a belief in a reasonable person.”
The italicized portions of the charge are at least softened, if not entirely explained and neutralized by the portions not here inserted. In our view that portion interpreted with the whole charge does not *1468 erroneously limit the right of self-defence. We understand the general rule of law on this point is: One must not exceed the limit of defence and prevention, and the evidence must be such that the jury can say that it had reasonable ground for the belief that the accused did not exceed these bounds.
There must have been an apparent necessity to ward off some unlawful and violent attack. The right of self-defence was not lessened by the whole instruction given. The learned counsel for the accused argues with force that the charge virtually decides that the fact of the accused being almost murdered by the deceased but a few minutes before the accidental' meeting of the two men at the patrol box, and the further fact of the assault or attempted assault upon the accused by the deceased at the meeting, with the gestures and exclamations of the deceased, should not have alarmed the accused or caused him to apprehend any danger from the deceased.
We think it sufficient answer to say:
The defendant was allowed to prove the manner in which the deceased actually assaulted him at the time of the homicide.
This evidence was relevant and material.
Further, the assault must be one committed or threatened at the time of the homicide, or so immediately preceding as to justify the taking of life in self-defence, or to ward off imminent danger of bodily harm. The attempted assassination was not intimately connected with the assault. The deceased had been arrested and was in the hands of officers of the law, at least, fifteen minutes after the shooting. •
On this point the jury was charged:
“While it is true the provocation must arise at the time of the com- “ mission of the offence and the passion must not be the result of a “ former provocation, yet in passing upon the sufficiency of a provo- “ cation and on the effect of the passion upon the mind of the de- “ fendant, the past conduct of the deceased toward the defendant, “ his threats, if any, and bearing — in fact, all the facts and circum- “ stances of the case should be considered by the jury. An act “ standing alone may not be sufficient provocation, but may be “ ample when it is one of a series of similar acts.”
In considering the “ facts and circumstances” of the case it included the admission of record, sustained by uncontradicted evi *1469 dence that the deceased bad shot the accused as before stated. It was necessary that at the moment there should have been some positive demonstration of the fell purpose; that the accused had reason to believe, or did believe that there was such a purpose to warrant the exercise of the extreme right of taking the life of a human being. A belief of danger, founded exclusively upon the attempted assassination, was not enough in this case to maintain the plea of self-defence.
The record does not disclose that at the time of the homicide the deceased was armed. Nor does it disclose that the deceased made any demonstration such as to place the accused in fear of death or of the infliction of great bodily harm.
In view of these facts the charge was not erroneous upon this branch of the case.
We pass to the question of the character of the deceased.
The court a qua certifies a fact sustained by the record that n° attempt was made to prove the character of the deceased. The defendant urges that the real character as to bloodthirstiness of the deceased was illustrated to and well known by him from the fact of his having attempted to assassinate him. The intervening time between the attempting assassination, the arrest made and the disarming of the accused are reasons, we think, which sustain the ruling-, which limited the instruction to the jury to the provocation which may have been felt without enlarging upon the subject and instructing them as in case the general character of a deceased person is assailed by proof.
It is also urged by the defendant that the charge is objectionable and misleading for the reason that the definition of murder is incorrect as it does not require the slayer to be of sound mind; that the definition of manslaughter is incorrect, as it requires the provocation to have arisen at the precise time that the blow was struck and confines the consideration of provocation to that precise period.
With reference to the definition of murder there was no bill of exception reserved to the whole charge or any special point made of the omission.
We think the following applies in this case: “ Omissions which the judge was not requested to supply here have been deemed, therefore, not to be error.” Bishop Cr. Pr., Vol. 1, Third Edition, paragraph 980, Sec. 2.
*1470 With reference to manslaughter:
Evidence of the preceding act was not kept from the jury.
A portion of the charge sought to direct the jury’s attention to the fatal encounter; another (copied, in our opinion) directs attention to the preceding act. Taken and interpreted together we do not think that there was error to the prejudice of the accused in thus charging.
Lastly, it is urged that the instructions as to the weight to be given to proof of good character of an accused is wrong.
We have searched in vain in the record for an assignment of error or bill of exception regarding character. “An alleged error discussed by appellant in his brief, but not otherwise appearing from the record, can not be considered on appeal.” State vs. Romano, 37 An. 98.
This completes a review of the proceedings and we have found no grounds upon which the accused can be relieved.
Judgment affirmed.