MONROE, C. J.
Defendant was prosecuted upon a charge of “assault by willfully shooting at,” and has appealed from his conviction and sentence.
His first bill of exception and' the statement per curiam attached thereto are, in effect, as follows:
“Bill No. 1. Nine jurors having been impaneled, and the regular venire having been exhausted, the court ordered the drawing of six tales jurors; * * * whereupon the sheriff opened the tales jury box and drew therefrom the names of Olius Lecompte, Charles Lester, Joseph Lyons, Arthur Forest, Jos. Bourgeois, and E. O. Hooper. The court, having ordered the sheriff to summon the said jurors and to serve accused with a copy of the list of names of said jurors as so drawn, then took a recess for an hour and a half. Recess being declared over at the expiration of said hour and a half, the sheriff announced that he had summoned Olius Lecompte, Charles Lester, and E. C. Hooper, but that he had made no effort to summon Joseph Lyons, Arthur Forest, or Jos. Bourgeois, because they were too far distant from the courthouse to be gotten there before late in the evening, as to Forest and Bourgeois, and before the next day, as to Joseph Lyons. Olius Lecompte and Charles Lester having been challenged for cause, and E. O. Hooper having been accepted as the tenth juror, the court ordered a second drawing of tales jurors, to which order accused objects, on the ground that he is entitled to have the sheriff summon Joseph Lyons, Arthur Forest, and Jos. Bourgeois before there can be had a second drawing of tales jurors herein. * * *
“Per Ouriam. Immediately upon issuing the order for the summoning of the first six tales jurors * * * the court took the usual noon recess, and during such recess the sheriff informed the court that he was preparing to secure conveyances to notify the jurors; that one of the jurors, to wit, Joseph Lyons, was out on the lake some 35 miles from the courthouse, and that it was necessary to hire a boat to reach him, which he was then making arrangements to secure; that Bourgeois lives at Gibson, about 25 miles from Houma, and Forest lives in an opposite direction, about 14 miles from the courthouse; that it would be necessary for him to hire two automobiles and one boat to serve the notices upon the jurors, and he could only secure the presence of the nearest juror, Forest, -if at home, by 6 or 7 o’clock that evening, and Lyons and Bourgeois, if found at home, some time the next day.
“The court reconvened at 1:30 o’clock, when, in open court, the sheriff reported the facts relative to the possibility of securing the attendances of the above-named jurors, and, further, that he had notified the other tales jurors, * * * and they were present in court. He further declared that he had desisted making arrangements to notify the jurors Lyons, Bourgeois, and Forest by instruction of the court after he had reported the facts relative thereto to the judge at the noon recess. Under the circumstances, there being only three jurors required, the court ordered the jurors present to be sworn on their voir dire, which was done, and Lecompte and Lester were challenged by the state for cause; E. O. Hooper accepted by state and accused, and duly sworn. The court then ordered the sheriff to make no further effort to secure the attendance of Lyons, Bourgeois, and Forest, considering it impracticable to secure their attendance within a reasonable delay, and deeming it in the interest of a reasonably speedy trial, ordered five more tales jurors to be drawn from the jury box, whereupon the sheriff drew the names of Peter Fanclel, Theogene Ohauvin, P. A. Drouillet, Albert Hotard, and Anthony Malbrough.
“While true that the names of the tales jurors were actually drawn from the tales jury box by the sheriff, they were so drawn in open court, in the presence of the judge. The clerk sat immediately next to the sheriff, and immediately prepared a list of such names as were drawn, and handed it to the counsel for the accused, in whose presence the drawing was made, as well as in the presence of the district attorney, without protest or obiectiou on the part of the defense, and without calling attention to the fact that the law directs the drawing to he done by the clerk.”
[1, 2] The law invoked on behalf of defendant is section 11 of Act 135 of 1898, as amended and re-enacted by Act 182 of 1914, which reads:
“That it shall be the duty of the jury commission at each time that it selects or draws a regular petit jury for the trial of criminal cases, and at such other times as the court may order, to select one hundred tales jurors, good men and true, and place their names in a box to be known as the tales jury box, securely lock the same and deliver it with the key thereto to the district *413 clerk of the parish, who shall keep the same unopened and locked in his possession until ordered by the court to produce the same. If on the trial of any criminal case the regular venire is exhausted, or it appears that it will be exhausted, before the selection of a jury therein, the court shall instruct the clerk to open such tales jury box and draw therefrom such number of tales jurors as in its judgment may be necessary to serve in said case, and it shall be the duty of the sheriff to forthwith summon such tales jurors to serve in said case, and it shall be the duty of such tales jurors so summoned! to report immediately for jury service in said court in said case, and no tales juror shall be summoned or be permitted to serve on such jury except as so drawn: Provided, that the names of the tales jurors drawn from such tales jury box, and who do not serve, shall not be returned to said tales jury box by the district clerk, but the slips upon which the said names are written shall be destroyed in the presence of the court by the district clerk; and provided that the jury commission may at any time, without the order of the court, supplement the names of tales jurors in such tales jury box, until the full complement of one hundred [names] is reached. All tales jurors shall possess the same qualifications as provided for regular jurors, but no publication of the tales jury list shall be necessary, bnt a copy of the same, as drawn by the clerk, shall be furnished the defense before the trial shall proceed. The jury commission shall not make known in any manner the names placed in said tales jury box, and shonld any of them do so he shall be held in contempt of court and punished accordingly.”
The law thus quoted is to be construed, as other laws, with reference to the purpose for which it was enacted, and that purpose, as is well understood, was to take from the sheriffs the power, of which they were formerly possessed, of selecting the tales jurors required in criminal cases when the regularvenires were exhausted. As the law now stands, therefore, all persons who may he called to serve as tales jurors are chosen by the jury commission. They are all required to be “good men and true,” and to possess the qualifications of regular jurors. Their names, to the number of 100, are to be written upon slips of paper and placed in the tales jury box, to be drawn therefrom at random (and not selected) when so ordered by the court, and in such number as, in the opinion of the court, may be needed for the completion of the jury in the case on trial.
It is true that the law, for the accomplishment of the purpose stated, has provided that the names shall be drawn from'the box by the clerk, but that is only to make it the more certain that they shall not, in any particular case, whether in the interest of the state or the defendant, be selected, and, though either the state or the defendant may, in any particular case, insist upon that requirement, so, we think, either or both may waive it, since, where the namep are drawn in the presence of the court, so that there can he no selection, the purpose of the law is accomplished, and the irregularity is among those which cannot be urged after the finding of a verdict.
“One cannot take the chances of a verdict in his favor, and, after conviction, object to the jury.” 12 Cyc. p. 712 (v); State v. Jackson, 25 La. Ann. 537; State v. Wilson, 36 La. Ann. 864.
In State v. Anderson, 136 La. 265, 66 South. 966, it was held that, under the statute here in question, it is within the discretion of the trial judge to determine, originally, how. many tales jurors shall be summoned for a particular occasion, and thereafter to determine how many of those whom he has ordered to be summoned shall be present before the selection of those needed to complete the jury may be proceeded with. In the course of the opinion, it was said that, in determining how many tales jurors shall be ordered:
“The judge will, no doubt, consider how many are required to complete the jury that is being impaneled, and how many of the whole number ordered are likely to be found, or found within a reasonable time.”
In the instant case, when the judge ordered that six tales jurors be drawn and summoned in order to supply three places on the jury, he did not, of course, know that three of the six would he persons whom the sheriff would be unable to find within a reasonable time, and that two of the remaining three would be challenged for cause, and he *415 had the same authority that he possessed ■originally to order such tales jurors as would, enable him to proceed without unreasonable delay with the business of his court, just as he would have had such authority if he had learned in advance that all of the jurors whose names were first drawn were ■dead, or were temporarily absent from the parish, or were disqualified from serving by reason (for instance) of their relationship to the defendant.
The making of the second order was a matter which concerned the proper conduct of the business of the trial court,' deprived the defendant of none of his rights, and of which he has no just reason to complain.
The verdict and sentence appealed from are therefore affirmed.